UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHIRLEY YVETTE CARTER,

       Plaintiff,

v.                                          Case No. 1:12-cv-1370
                                                      Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                                    /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on June 13, 1959 (AR 163).[1] She alleged a disability onset date of June 1, 2008, which she later amended at the administrative hearing to July 27, 2010 (AR 13, 163).[2] Plaintiff graduated from high school and had previous employment as a sales clerk and supervisor in a department store (AR 170). Plaintiff identified her disabling conditions as "right ankle problems, walk with a limp" (AR 168). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on August 25, 2011 (AR 13-24). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] Plaintiff's earnings report showed that she earned income after the original onset date of June 1, 2008 (AR 13).

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 27, 2010 and that she met the insured status requirements under the Social Security Act through December 31, 2012 (AR 15). Second, the ALJ found that plaintiff had severe impairments of: status-post left knee replacement as of January 2011; status-post right ankle fixation with open reduction internal fixation; degenerative disc disease of the lumbar spine; and obesity (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 15). Specifically, plaintiff did not meet the requirements of Listings 1.02 (major dysfunction of a joint), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.04 (disorders of the spine) (AR 16).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) in that the claimant is limited to lifting up to 10 pounds occasionally, would be able to stand or walk about 2 hours and sit for about 6 hours out of 8, for a combined total of 8 hours per day with normal breaks. The claimant should never climb ladders, ropes, or scaffolds, she should never crawl, but she could occasionally engage in the remaining postural activities including climbing ramps and stairs, balancing, stooping, kneeling, and crouching. The claimant is limited to jobs that can be performed while using a hand-held assistive device such as a cane on even terrain. Finally, the claimant is to avoid even moderate exposure to hazards such as moving machinery or unprotected heights.

(AR 16-17). At the fourth step, the ALJ also found that plaintiff was unable to perform any past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff could perform a range of work in the national and Michigan economies (AR 22-23). The work included: "a cashier food service" (7,300 state jobs and 242,100 national jobs); and "a cashier backroom department store" (1,300 state jobs and 41,900 national jobs) (AR 23). The ALJ further stated that even if plaintiff's RFC was reduced to accommodate her alleged need to elevate her leg, "such jobs would still be available at number reduced to 50%, as set forth in the vocational expert testimony" (AR 23). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from July 27, 2010 through August 25, 2011 (the date of the decision) (AR 23-24).

### III. ANALYSIS

Plaintiff raised two issues on appeal:

**A. The ALJ did not have substantial evidence to support his finding that plaintiff could have performed a significant number of jobs.**

At step five of the sequential evaluation, the ALJ found that plaintiff could perform 8,600 cashier jobs which were available in Michigan. Plaintiff contends that the ALJ's finding is not supported by substantial evidence.

As an initial matter, plaintiff contends that the number of available jobs should be reduced by 50%, resulting in only 4,300 jobs. Plaintiff apparently reached this number based upon the ALJ's statement that "[t]he undersigned also notes that, even if the claimant's residual functional capacity was reduced to accommodate her alleged need to elevate her leg as he representative argued, such jobs would still be available at number reduced to 50%, as set forth in the vocational expert testimony" (AR 23). Plaintiff's need to elevate her left leg was a restriction determined by her primary care physician, R. Michael, D.O., who issued a "certificate for return to school work

5

[sic]" on April 28, 2010 stating that plaintiff could return to work on April 29, 2010 with the following limitations "4.5 hours standing may do 8 hrs if sitting [e]levate [left] leg when sitting" (AR 332).

Plaintiff justifies her need to elevate her left leg, and the use of the lesser number of jobs, because the ALJ failed to give "good reasons" for the weight given to a treating physician as required under *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546 (6th Cir. 2004). *See* 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"). The ALJ addressed Dr. Michael's limitation as follows:

> R. Michael, D.O indicated the claimant could return to work on April 29, 2010 but that she should limit standing to 4 - 5 hours, sitting to 8 hours, and she should elevate her left leg when sitting. This opinion was rendered immediately prior to the claimant's left knee surgery and her treatment and therapy records show improvement following the procedure. Therefore, the undersigned gives these opinions little weight as they pertain to a finite period and do not reflect permanent or long-term limitations (Exhibits 8F and 22F).

(AR 21). Assuming that Dr. Michael was a treating physician, the ALJ articulated good reasons for giving little weight to the doctor's restrictions issued on April 28, 2010.

Having established that the ALJ properly excluded the leg elevation restriction from the RFC, the issue before the Court is whether the ALJ's decision is supported by substantial evidence, where the vocational evidence established that plaintiff could perform 8,600 jobs in the regional economy, defined as the State of Michigan. In *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), the Sixth Circuit found that 1,350 to 1,800 jobs in the Dayton, Ohio, area was significant number in that case. In reaching its determination, the court observed that there is no "magic number" that represents a "significant number" of jobs. *Id.* "The decision should ultimately be left to the trial

6

judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.* The judge may consider factors such as: vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.*

The Sixth Circuit also considered the relevant statute and regulation. The definition of disability in 42 U.S.C. § 423(d)(2)(A), which states in pertinent part that "'work which exists in the national economy' means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* at 274-75. Finally, the applicable regulation, 20 C.F.R. § 404.1566(b), provides in pertinent part:

> Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered "work which exists in the national economy". We will not deny you disability benefits on the basis of the existence of these kinds of jobs.

*Id.* at 275.

In *Police v. Secretary of Health and Human Services*, No. 87-1609, 1988 WL 28536 (6th Cir. April 1, 1988), the Sixth Circuit found that 3,600 jobs located within the State of Michigan was considered to be a significant number. Given these considerations, the existence of 8,600 jobs is sufficient to establish a "significant number" of jobs that plaintiff can perform in the State of Michigan. Even if the Court adopted plaintiff's reasoning and reduced these available jobs by 50%, the resulting 4,300 jobs would exceed the 3,600 statewide jobs identified in *Police*. Accordingly, plaintiff's claim of error will be denied.

> **B. The ALJ committed reversible error by using improper boilerplate language to evaluate plaintiff's RFC capacity and also may [sic] improper credibility determinations.**

Plaintiff contends that the ALJ used meaningless "boilerplate language" to evaluate her credibility, when he stated that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 18). Plaintiff relies on the Seventh Circuit decision in *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), which criticized the Agency's use of this language in ALJ decisions:

> One problem with the boilerplate is that the assessment of the claimant's "residual functional capacity" (the bureaucratic term for ability to work) comes later in the administrative law judge's opinion, not "above" — above is just the foreshadowed conclusion of that later assessment. A deeper problem is that the assessment of a claimant's ability to work will often (and in the present case) depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be. In this regard we note the tension between the "template" and SSR 96–7p(4), www. ssa. gov/ OP_ Home/ rulings/ di/ 01/ SSR 96– 07– di– 01. html (visited Jan. 4, 2012), which states that "an individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." The applicant's credibility thus cannot be ignored in determining her ability to work (her residual functional capacity, in SSA-speak).

*Bjornson*, 671 F.3d at 645-46. The court also opined that "[t]he Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'" *Id.* at 646.

8

While the Seventh Circuit noted that "we first stubbed our toe" on this "opaque boilerplate," *id.* at 644, the court did not summarily reverse the ALJ's decision for using the boilerplate, *see id.* at 644-49. Rather, the Court considered the ALJ's specific reasons for rejecting the ALJ's credibility determination. *See id.* at 646 ("[t]he administrative law judge based his doubts about Bjornson's credibility on his assessment of the medical reports or testimony of the three doctors whom we've mentioned"). Assuming that this Court agreed with the Seventh Circuit's characterization of the Commissioner's boilerplate language, the ALJ's use of the language in this case is not, in and of itself, grounds for reversal because the ALJ also gave specific reasons for rejecting plaintiff's credibility. Examples of the ALJ's reasons include the following:

> Prior to the amended alleged onset date, the claimant was prescribed physical therapy for shin splints in March 2009. However, she failed to report to her final three appointments and did not attempt to contact the clinic for follow up treatment (Exhibits 1F and 3F).
>
> \* \* \*
>
> The undersigned notes that the claimant's stated limitations and pain severity are not entirely supported by the objective evidence of record. Her history of pain has been rated either 3 or 4, never consistently as severe as 8 or 9, even with prescription intervention. She also showed improvement following her January 2011 surgery and showed satisfaction in her progress as documented in her physical therapy notes, which is contradictory to her hearing testimony.
>
> \* \* \*
>
> [In September 2009], the claimant reported to the Emergency Room with right ankle pain. X-rays found only the pre-existing internal fixation, along with mild to moderate osteoarthritic changes and swelling. She was prescribed Vicodin and released. In December 2009, the claimant reported that her ankle pain was generally 4 or 5 out of 10, but on rare occasions would spike to 8 out of 10 and complained of continued right ankle pain in February 2010. X-rays done April 7, 2010 showed moderate spurring from the posterior distal right tibia. However, after only a few physical therapy treatments, April 2010 notes showed improvement, a normal range of motion in the ankle, and increased muscle strength. Based on her radiographic

9

images and history of surgical hardware placement, the claimant was diagnosed with mild posttraumatic osteoarthritis. . .

  When asked at the hearing about her ankle pain, the claimant rated her pain at 10 out of 10, stating that her ankle could not get any more painful than it already was. Even with the help of pain medication, she rated her ankle pain 9 out of 10. Although, as mentioned above, she testified that her medications were helpful in alleviating her pain and they did not give her any side effects (Hearing Testimony). The claimant's statements regarding her pain level are not entirely supported by the objective evidence as mentioned above, and are contrary to earlier indications of pain throughout the record.

* * *

  When asked at the hearing if she has ever been discouraged by any of her treating physicians against work, the claimant testified that no doctor had told her that she was totally unable to work. The undersigned also notes that the claimant has not looked for work since her last employment in July 2010 (Hearing Testimony).

* * *

  The claimant's activities of daily living seem to contradict some of her alleged limitations as mentioned above. Although the claimant alleged difficulty climbing stairs, she lives in a second floor apartment, she goes grocery shopping every week and attends church every Sunday. She also alleged difficulty standing for long periods of time and testified that she can only lift up to 5 pounds. However, she occasionally does her own grocery shopping, takes public transportation to and from the grocery store, and manages to carry her groceries the entire way. She also lives alone and is capable of preparing light meals, tending to her own personal care needs, and does her own cleaning, vacuuming, and laundry. As for her complaints of pain, the records document the claimant's pain rating to be 3 or 4, not as excruciating as 9 or 10, as she stated at the hearing.

* * *

  In sum, the above residual functional capacity assessment is supported by the objective and opinion evidence of record. Overall, the claimant's allegations as to symptom severity and functional impairment are not supported by the evidence of record to the degree alleged as mentioned above. The claimant has failed to exhibit any clinical signs of a debilitating illness. No treating or examining doctor assigned medical restrictions or functional limitations that would preclude transferable skills from the claimant's past relevant work. Therefore, the undersigned has determined that there is simply insufficient evidence to substantiate the claimant's claims.

(AR 18-20, 22). Accordingly, plaintiff's claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  The Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  March 24, 2014 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge